Daniel K. Brough (10283)
James C. Dunkelberger (13690)
Bradley C. Johnson (17250)
BENNETT TUELLER JOHNSON & DEERE
3165 East Millrock Drive, Suite 500
Salt Lake City, Utah 84121
Telephone: (801) 438-2000
Facsimile: (801) 438-2050
dbrough@btjd.com; jdunkelberger@btjd.com; bradley.johnson@btjd.com

*Attorneys for BMF Advance, LLC*

## IN THE THIRD JUDICIAL DISTRICT COURT

## SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| BMF ADVANCE, LLC, a New York limited liability company,<br><br>    Plaintiff,<br><br>vs.<br><br>LITISCAPE, LLC, an Arizona limited liability company; ENCORP, LLC, an alleged limited liability company; EN CORP USA, a Texas corporation; JOSEPH H, INC, a foreign corporation; MICHAEL KAMALU, an individual; JOSEPH AZULAY, an individual; ENRIQUE GARCIA, an individual; VICTOR ENRIQUEZ, an individual; and DOES 1–10,<br><br>    Defendants. | **COMPLAINT**<br><br>Civil No.:<br><br>Judge:<br><br>(***Discovery Tier 3***) |

Plaintiff BMF Advance, LLC ("**BMF**"), by and through counsel, hereby complains against the above-named Defendants (collectively, "**Defendants**") and alleges as follows:

## PARTIES

1. BMF is a limited liability company organized under the laws of New York.

2. Defendant Litiscape, LLC ("**Litiscape**") is a limited liability company organized under the laws of Arizona.

3. Defendant Encorp, LLC is allegedly a limited liability company with its principal place of business located in El Paso, Texas. However, after a reasonable and diligent search, BMF has been unable to locate any evidence of Encorp's formation. As such, upon information and belief, Encorp is not a duly formed limited liability company.

4. Defendant EN Corp USA is a corporation organized under the laws of Texas. Upon information and belief, EN Corp USA's principal place of business is located in El Paso, Texas.

5. Defendants Encorp, LLC and EN Corp USA are hereinafter referred to collectively as "**Encorp**."

6. Defendant Joseph H, Inc. ("**Joseph H Inc**") is, upon information and belief, a corporation organized under the laws of Canada with its principal place of business located in Thornhill, Ontario, Canada.

7. Defendant Michael Kamalu ("**Kamalu**") is an individual who, upon information and belief, resides in Arizona. Upon further information and belief, Kamalu is a principal of Litiscape.

8. Defendant Joseph Azulay ("*Azulay*") is an individual who, upon information and belief, resides in Ontario, Canada. Upon further information and belief, Azulay is a principal of Joseph H Inc.

9. Defendant Enrique Garcia ("*Garcia*") is an individual who, upon information and belief, resides in Texas. Upon further information and belief, Garcia is either a principal of En Corp USA or affiliated in some way with Encorp, LLC—which, upon information and belief, is not a formed and registered business entity.

10. Defendant Victor Enriquez ("*Enriquez*") is an individual who, upon information and belief, resides in Texas. Upon further information and belief, Enriquez is either a principal of En Corp USA or affiliated in some way with Encorp, LLC—which, upon information and belief, is not a formed and registered business entity.

11. Does 1–10 are individuals and/or entities who at law or in equity should bear liability for BMF's damages pleaded herein.

**JURISDICTION, VENUE, AND DISCOVERY TIER**

12. This Court has subject matter jurisdiction over this matter pursuant to Utah Code Ann. § 78A-5-102.

13. This Court has personal jurisdiction over Defendants upon the following grounds:

    a. Litiscape

        i. Litiscape conducts regular and systematic business in Utah.

        ii. Alternatively, Litiscape has sufficient contacts with Utah such that (a) it would reasonably anticipate being haled into Court in Utah, (b) this Court's exercise of

jurisdiction over Litiscape would not offend traditional notions of fair play and substantial justice, and (c) BMF's allegations against Litiscape arise out of Litiscape's Utah contacts.

    iii. BMF's allegations in this case arise out of Defendants' disposition of funds that BMF caused to be transferred to the custody of nonparty Clark Business Law, PLLC ("**Clark Law**"), a Utah professional limited liability company that maintains its principal place of business in the State of Utah. Clark Law, at all relevant times hereto, represented Litiscape in this matter. Clark Law drafted one or more agreements relevant to this matter that specify that this Court has jurisdiction in any dispute related to the funds transferred to Clark Law. Furthermore, BMF delivered the funds at issue in this lawsuit to Clark Law in Utah.

  b. Encorp

    i. Encorp conducts regular and systematic business in Utah.

    ii. Alternatively, Encorp has sufficient contacts with Utah such that (a) it would reasonably anticipate being haled into Court in Utah, (b) this Court's exercise of jurisdiction over Encorp would not offend traditional notions of fair play and substantial justice, and (c) BMF's allegations against Encorp arise out of Encorp's Utah contacts.

    iii. Encorp engaged in tortious, inequitable, or otherwise wrongful conduct with respect to the funds BMF deposited with Clark Law in Utah—upon information and belief and without limitation, by accessing and obtaining those funds from Utah—and knew or should have known that the effects of its conduct would justify this Court's exercise of jurisdiction over Encorp.

  c. Joseph H Inc

    i. Joseph H Inc conducts regular and systematic business in Utah.

4

        ii.      Alternatively, Joseph H Inc has sufficient contacts with Utah such that (a) it would reasonably anticipate being haled into Court in Utah, (b) this Court's exercise of jurisdiction over Joseph H Inc would not offend traditional notions of fair play and substantial justice, and (c) BMF's allegations against Joseph H Inc arise out of Joseph H Inc's Utah contacts.

        iii.      Upon information and belief, Joseph H Inc engaged in tortious, inequitable, or otherwise wrongful conduct with respect to the funds BMF deposited with Clark Law in Utah—upon information and belief and without limitation, by accessing and obtaining those funds from Utah—and knew or should have known that the effects of its conduct would justify this Court's exercise of jurisdiction over Joseph H Inc.

    d.    Kamalu

        i.      Kamalu conducts regular and systematic business in Utah.

        ii.      Alternatively, Kamalu has sufficient contacts with Utah such that (a) he would reasonably anticipate being haled into Court in Utah, (b) this Court's exercise of jurisdiction over Kamalu would not offend traditional notions of fair play and substantial justice, and (c) BMF's allegations against Kamalu arise out of Kamalu's Utah contacts.

        iii.      Upon information and belief, Kamalu engaged in tortious, inequitable, or otherwise wrongful conduct with respect to the funds BMF deposited with Clark Law in Utah—upon information and belief and without limitation, by accessing and obtaining those funds from Utah—and knew or should have known that the effects of his conduct would justify this Court's exercise of jurisdiction over Kamalu.

   e. Azulay

     i. Azulay conducts regular and systematic business in Utah.

     ii. Alternatively, Azulay has sufficient contacts with Utah such that (a) he would reasonably anticipate being haled into Court in Utah, (b) this Court's exercise of jurisdiction over Azulay would not offend traditional notions of fair play and substantial justice, and (c) BMF's allegations against Azulay arise out of Azulay's Utah contacts.

     iii. Upon information and belief, Azulay engaged in tortious, inequitable, or otherwise wrongful conduct with respect to the funds BMF deposited with Clark Law in Utah—upon information and belief and without limitation, by accessing and obtaining those funds from Utah—and knew or should have known that the effects of his conduct would justify this Court's exercise of jurisdiction over Azulay.

   f. Garcia and Enriquez

     i. Garcia and Enriquez conduct regular and systematic business in Utah.

     ii. Alternatively, Garcia and Enriquez have sufficient contacts with Utah such that (a) they would reasonably anticipate being haled into Court in Utah, (b) this Court's exercise of jurisdiction over Garcia and Enriquez would not offend traditional notions of fair play and substantial justice, and (c) BMF's allegations against Garcia and Enriquez arise out of their Utah contacts.

     iii. Upon information and belief, Garcia and Enriquez engaged in tortious, inequitable, or otherwise wrongful conduct with respect to the funds BMF deposited with Clark Law in Utah—upon information and belief and without limitation, by accessing and

obtaining those funds from Utah—and knew or should have known that the effects of its conduct would justify this Court's exercise of jurisdiction over Garcia and Enriquez.

14. Venue is proper in this Court pursuant to Utah Code § 78B-3-307.

15. This case involves a claim for monetary damages of more than $300,000 and therefore falls within Tier 3 of Rule 26(c)(3) of the Utah Rules of Civil Procedure.

## GENERAL ALLEGATIONS

16. This case arises out of an alleged transaction (the "***Alleged Transaction***") for the purchase of six million (6,000,000) boxes of nitrile gloves.

17. BMF learned of the Alleged Transaction in or about June 2020 from nonparty Fundygo LLC ("***Fundygo***").

18. Upon information and belief, based on how the Alleged Transaction was described to BMF, the material components of the Alleged Transaction included the following steps:

    a. Litiscape would purchase nitrile gloves from a supplier in Vietnam;

    b. Joseph H Inc would purchase the gloves from Litiscape;

    c. Joseph H Inc would resell the gloves;

    d. Joseph H Inc would share profits from the resale of the gloves with Fundygo, in exchange for payment of certain funds upfront to allow Litiscape to pay for sea freight and other logistics charges incurred in delivering the glove; and

    e. Fundygo would repay BMF.

19. Based on BMF's understanding of the Alleged Transaction, and in anticipation of receiving a portion of the proceeds due Fundygo, BMF furnished $3 million to be applied to the Alleged Transaction.

20. On or about July 22, 2020, BMF caused the funds to be deposited directly in the custody of Clark Law, rather than passing through Fundygo.

21. Also, on or about July 22, 2020, Azulay and Joseph H Inc requested that Fundygo authorize the release of $1.8 million to pay XPO, a logistics company, for some of the freight charges for delivery of the gloves.

22. Fundygo immediately relayed the request to BMF.

23. BMF and Fundygo originally declined the request for release of funds.

24. However, later that day, Joseph H Inc, Azulay, Litiscape, and Kamalu verbally assured BMF and Fundygo that (a) they would ensure that the released $1.8 million would go directly to XPO for the payment of freight charges, and (b) the released $1.8 million was refundable in the event that the gloves proved unacceptable.

25. In reliance upon the representations set forth in paragraph 24, BMF and Fundygo authorized the release of $1.8 million (the "***Missing Funds***")—again, on the assumption that those funds would go to XPO for the payment of freight charges.

26. However, despite these representations, Joseph H Inc, Azulay, Litiscape, and Kamalu caused the Missing Funds to be released to Litiscape rather than to XPO.

27. To effectuate that diversion, Azulay executed a "Wire Transfer Authorization" in the amount of the Missing Funds that falsely stated that Azulay and Joseph H Inc were "authorized to act on behalf of [BMF]."

8

28. Azulay signed the Wire Transfer Authorization as the "President" and "CEO" of BMF.

29. Azulay's and Joseph H Inc's representations are false because Azulay is not, and has never been, the president or CEO of BMF, nor have Azulay or Joseph H Inc ever been authorized to act on BMF's behalf in any way.

30. This Wire Transfer Authorization did not purport to transfer the Missing Funds to XPO as represented. Instead, it listed Litiscape as the entity receiving the Missing Funds.

31. Litiscape and Kamalu subsequently acknowledged that Litiscape received the Missing Funds.

32. Upon information and belief, Litiscape and Kamalu agreed with Joseph H Inc and Azulay, in advance, that Joseph H Inc and Azulay would falsify the Wire Transfer Authorization with an aim to obtaining the Missing Funds on behalf of Litiscape and Kamalu.

33. Litiscape and Kamalu assert that they passed most of the Missing Funds on to Encorp, Garcia, and/or Enriquez.

34. However, upon information and belief, Litiscape and/or Kamalu retained a substantial, but presently unknown, portion of the Missing Funds.

35. Upon further information and belief, Kamalu received a portion of the Missing Funds and kept the money or invested it in ventures other than Litiscape and separate and apart from any funds Litiscape received.

36. BMF and Fundygo later confirmed through correspondence with XPO that XPO had not received any portion of the Missing Funds.

37. Upon information and belief, the Alleged Transaction either (a) fell through such that the gloves would not be shipped, or (b) never actually existed as a legitimate transaction.

38. BMF and Fundygo demanded return of the Missing Funds from Litiscape and Kamalu.

39. Litiscape and Kamalu have refused to return the Missing Funds.

40. Litiscape and Kamalu have represented that they have spoken to Encorp, Garcia, and Enriquez and that they have acknowledged receipt of all or a portion of the Missing Funds.

41. Litiscape and Kamalu claim that Encorp, Garcia, and Enriquez have refused to return any portion of the Missing Funds.

42. Upon information and belief, Azulay and Joseph H Inc benefitted from the Missing Funds.  In correspondence with BMF, Azulay has acknowledged that he misrepresented his authority in the Wire Transfer Authorization and pledged to help secure the return of the Missing Funds.

43. However, to date, Azulay and Joseph H Inc have not returned the Missing Funds, despite BMF's demand for repayment.

**CLAIM FOR RELIEF**
**(Unjust Enrichment – All Defendants)**

44. BMF realleges and incorporates by reference all prior allegations of the foregoing paragraphs.

45. BMF conferred a benefit upon Defendants according to the amount of the Missing Funds that they improperly took and retained, as set forth below:

   a. <u>Litiscape</u> acknowledges receipt of the Missing Funds and alleges that it passed most of them on to Encorp, Garcia, and/or Enriquez.  However, upon information and

belief, Litiscape retained a portion of the Missing Funds and/or improperly diverted a portion of the Missing Funds to insiders (e.g. Kamalu, investors) for its own purposes and benefit.

    b.  Kamalu, upon information and belief, received for himself all or a portion of the Missing Funds that Litiscape took and/or diverted a portion of the Missing Funds to his personal accounts and/or other affiliates for reasons unrelated to the Alleged Transaction and for his own purposes and benefit.  In addition, upon information and belief, there exists such a unity of identity and operations between Kamalu and Litiscape that it would be unfair and prejudicial to observe the corporate form.  Upon information and belief, Kamalu and Litiscape have themselves disregarded the corporate form by allowing Kamalu to freely divert the Missing Funds to his own account or to pay investors on other deals.

    c.  Encorp, upon information and belief, received a substantial portion of the Missing Funds and has retained them despite the fact that either the Alleged Transaction fell through and/or was never legitimate in the first place.

    d.  Azulay and Joseph H Inc, upon information and belief, have received a benefit from the Missing Funds.  Azulay, in correspondence with BMF, acknowledged his wrongdoing in forging the Wire Transfer Authorization, and has pledged to work with BMF for the return of the Missing Funds.  However, to date, the Missing Funds have not been returned.

    e.  Garcia and Enriquez, upon information and belief, received a portion of the Missing Funds either in their own name or through Encorp.  Upon information and belief, Garcia and Enriquez at all relevant times, acted in their own interest or on behalf of Encorp, LLC, which does not appear to be a legitimate limited liability company.  Alternatively, Garcia

and Enriquez purported to act through EN Corp USA and there exists such a unity of interest and operations between them that it would be unfair and prejudicial to observe the corporate form.

46. For the reasons set forth above, it would be unjust for any of the Defendants to retain that portion of the Missing Funds that they received because, among other reasons, (a) BMF authorized the release of the Missing Funds in reasonable reliance on false representations (i.e. Litiscape's and others' representations that the funds would go to XPO); (b) Azulay and Joseph H Inc transferred the Missing Funds through forgery and fraud; (c) the Alleged Transaction fell through or never existed in the first place; (d) Defendants used the Missing Funds for purposes unrelated to the Alleged Transaction, including diverting the funds to their personal accounts or their investors on other deals; and (e) Defendants have conferred no reciprocal benefit upon BMF.

47. Defendants' improper receipt and retention of the Missing Funds subjects them to an obligation to immediately disgorge the Missing Funds and return them to BMF.

48. BMF is therefore entitled to judgment as set forth in the Prayer for Relief below.

## PRAYER FOR RELIEF

WHEREFORE, BMF prays for judgment against Defendants as follows:

1. On BMF's First Claim for Relief, asserting a claim for unjust enrichment for judgment in favor of BMF and against Defendants in the amount of $1.8 million and against each of the Defendants in the amount they received of the Missing Funds, the exact amount to be proven at trial, together with pre- and post-judgment interest, costs, and attorney's fees.

2. For such other and further relief as the Court deems just and equitable under the circumstances.

DATED this 15th day of January 2021.

                                          BENNETT TUELLER JOHNSON & DEERE

                                          */s/ James C. Dunkelberger*
                                          Daniel K. Brough
                                          James C. Dunkelberger
                                          Bradley C. Johnson
                                          *Attorneys for Plaintiff BMF Advance, LLC.*