Daniel K. Brough (10283)
James C. Dunkelberger (13690)
Bradley C. Johnson (17250)
BENNETT TUELLER JOHNSON & DEERE
3165 East Millrock Drive, Suite 500
Salt Lake City, Utah 84121
Telephone: (801) 438-2000
Facsimile: (801) 438-2050
dbrough@btjd.com; jdunkelberger@btjd.com; bradley.johnson@btjd.com

*Attorneys for BMF Advance, LLC*

---

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| BMF ADVANCE, LLC, a New York limited liability company, <br><br>       Plaintiff, <br><br> vs. <br><br> LITISCAPE, LLC, an Arizona limited liability company; ENCORP, LLC, an alleged limited liability company; EN CORP USA, a Texas corporation; JOSEPH H, INC, a foreign corporation; MICHAEL KAMALU, an individual; JOSEPH AZULAY, an individual; ENRIQUE GARCIA, an individual; VICTOR ENRIQUEZ, an individual; and DOES 1–10, <br><br>       Defendants. | **MEMORANDUM IN OPPOSITION TO ENCORP PARTIES' MOTION TO DISMISS** <br><br><br> Civil No. 2:21-cv-00103-DBP <br><br> Magistrate Judge Dustin B. Pead |

Plaintiff BMF Advance, LLC ("***BMF***"), through counsel and pursuant to Federal Rule of

Civil Procedure 7 and DUCivR 7-1(b), hereby files this memorandum in opposition to the

Motion to Dismiss the Complaint (Dkt. No. 22) (the "***Motion to Dismiss***") filed by EN Corp

USA ("*Encorp*"), Enrique Garcia ("*Garcia*"), and Victor Enriquez ("*Enriquez*" and, together with Encorp and Garcia, the "*Encorp Parties*").

## INTRODUCTION

This case arises out of the misappropriation of $1.8 million (the "*Missing Funds*") that BMF delivered in connection with an alleged transaction (the "*Alleged Transaction*") to purchase six million (6,000,000) boxes of nitrile gloves.  BMF deposited the Missing Funds in the custody of Clark Business Law, PLLC ("*Clark Law*"), a Utah law firm, where they were supposed to stay until released by BMF to be used in the Alleged Transaction.  Instead, Defendant Joseph Azulay ("*Azulay*") posed as an officer of BMF—despite the lack of any affiliation or authorization—and forged a release (the "*Release of Funds*") of the Missing Funds to Defendant Litiscape, LLC ("*Litiscape*").  Litiscape received the funds and transferred a portion of them to its principal Michael Kamalu's ("*Kamalu*") personal account(s).  Thereafter, Litiscape forwarded $750,000 of the Missing Funds to the Encorp Parties.  Discovery is ongoing, and BMF is still in the process of ascertaining the facts and circumstances of the Encorp Parties' disposition of the Missing Funds.  BMF believes, upon information, that a substantial portion of the Missing Funds were used to pay other investors, creditors, or vendors in transactions unrelated to the Alleged Transaction.

BMF's Complaint states a claim against the Encorp Parties for unjust enrichment.  The Court must, at this stage, accept as true the allegation (albeit pleaded in the alternative) that one or more of the Encorp Parties received the Missing Funds, even if it is unclear at this point which of the Encorp Parties actually received that benefit.  The Complaint further alleges ample facts that, if proven, would allow the Court to determine that it would be unjust for the Encorp Parties

2

to retain the benefit of the Missing Funds without compensating BMF.  The Encorp Parties should never have received the Missing Funds, let alone used them for their own purposes unrelated to the Alleged Transaction.

Garcia and Enriquez also challenge the Court's exercise of personal jurisdiction over them.  However, the allegations of the Complaint, buttressed by certain documents and communications discovered to date, demonstrate that both individuals purposely availed themselves of participating in the Alleged Transaction.  Such participation was in their individual capacity to the extent that they personally received the Missing Funds.  The Court's exercise of personal jurisdiction over Garcia and Enriquez would not violate traditional notions of fair play and substantial justice given that the balance of factors relating to the parties' burden and Utah's interest in adjudicating this dispute.  The Court should deny the Motion to Dismiss.

## FACTS

### *Allegations Relating to Unjust Enrichment Claim*

The Complaint contains the following allegations relevant to BMF's unjust enrichment claim.  For ease of reference, the following recitation preserves the allegations' paragraph numbers contained in the Complaint.

17.    BMF learned of the Alleged Transaction in or about June 2020 from nonparty Fundygo LLC ("***Fundygo***").

18.    Upon information and belief, based on how the Alleged Transaction was described to BMF, the material components of the Alleged Transaction included the following steps:

        a.    Litiscape would purchase nitrile gloves from a supplier in Vietnam;

        b.    Joseph H Inc would purchase the gloves from Litiscape;

        c.    Joseph H Inc would resell the gloves;

      d.      Joseph H Inc would share profits from the resale of the gloves with Fundygo, in exchange for payment of certain funds upfront to allow Litiscape to pay for sea freight and other logistics charges incurred in delivering the glove; and

      e.      Fundygo would repay BMF.

19.      Based on BMF's understanding of the Alleged Transaction, and in anticipation of receiving a portion of the proceeds due Fundygo, BMF furnished $3 million to be applied to the Alleged Transaction.

20.      On or about July 22, 2020, BMF caused the funds to be deposited directly in the custody of Clark Law, rather than passing through Fundygo.

21.      Also, on or about July 22, 2020, Azulay and Joseph H Inc requested that Fundygo authorize the release of $1.8 million to pay XPO, a logistics company, for some of the freight charges for delivery of the gloves.

22.      Fundygo immediately relayed the request to BMF.

23.      BMF and Fundygo originally declined the request for release of funds.

24.      However, later that day, Joseph H Inc, Azulay, Litiscape, and Kamalu verbally assured BMF and Fundygo that (a) they would ensure that the released $1.8 million would go directly to XPO for the payment of freight charges, and (b) the released $1.8 million was refundable in the event that the gloves proved unacceptable.

25.      In reliance upon the representations set forth in paragraph 24, BMF and Fundygo authorized the release of $1.8 million (the "***Missing Funds***")—again, on the assumption that those funds would go to XPO for the payment of freight charges.

26.      However, despite these representations, Joseph H Inc, Azulay, Litiscape, and Kamalu caused the Missing Funds to be released to Litiscape rather than to XPO.

27.      To effectuate that diversion, Azulay executed a "Wire Transfer Authorization" in the amount of the Missing Funds that falsely stated that Azulay and Joseph H Inc were "authorized to act on behalf of [BMF]."

28.      Azulay signed the Wire Transfer Authorization as the "President" and "CEO" of BMF.

29.     Azulay's and Joseph H Inc's representations are false because Azulay is not, and has never been, the president or CEO of BMF, nor have Azulay or Joseph H Inc ever been authorized to act on BMF's behalf in any way.

30.     This Wire Transfer Authorization did not purport to transfer the Missing Funds to XPO as represented.  Instead, it listed Litiscape as the entity receiving the Missing Funds.

31.     Litiscape and Kamalu subsequently acknowledged that Litiscape received the Missing Funds.

32.     Upon information and belief, Litiscape and Kamalu agreed with Joseph H Inc and Azulay, in advance, that Joseph H Inc and Azulay would falsify the Wire Transfer Authorization with an aim to obtaining the Missing Funds on behalf of Litiscape and Kamalu.

33.     Litiscape and Kamalu assert that they passed most of the Missing Funds on to Encorp, Garcia, and/or Enriquez.[1]

34.     However, upon information and belief, Litiscape and/or Kamalu retained a substantial, but presently unknown, portion of the Missing Funds.

35.     Upon further information and belief, Kamalu received a portion of the Missing Funds and kept the money or invested it in ventures other than Litiscape and separate and apart from any funds Litiscape received.

36.     BMF and Fundygo later confirmed through correspondence with XPO that XPO had not received any portion of the Missing Funds.

37.     Upon information and belief, the Alleged Transaction either (a) fell through such that the gloves would not be shipped, or (b) never actually existed as a legitimate transaction.

38.     BMF and Fundygo demanded return of the Missing Funds from Litiscape and Kamalu.

39.     Litiscape and Kamalu have refused to return the Missing Funds.

---

[1] In response to this allegation, Litiscape admitted in its Answer and Crossclaim (Dkt. No. 21) "that Litiscape and Kamalu passed a portion of the $1.8 million to Encorp, Garcia, and/or Enriquez."

40.     Litiscape and Kamalu have represented that they have spoken to Encorp, Garcia, and Enriquez and that they have acknowledged receipt of all or a portion of the Missing Funds.

41.     Litiscape and Kamalu claim that Encorp, Garcia, and Enriquez have refused to return any portion of the Missing Funds.

45.     BMF conferred a benefit upon Defendants according to the amount of the Missing Funds that they improperly took and retained, as set forth below:

        a.      Litiscape acknowledges receipt of the Missing Funds and alleges that it passed most of them on to Encorp, Garcia, and/or Enriquez. However, upon information and belief, Litiscape retained a portion of the Missing Funds and/or improperly diverted a portion of the Missing Funds to insiders (e.g. Kamalu, investors) for its own purposes and benefit.

        b.      Kamalu . . .

        c.      Encorp, upon information and belief, received a substantial portion of the Missing Funds and has retained them despite the fact that either the Alleged Transaction fell through and/or was never legitimate in the first place.

        d.      Azulay and Joseph H Inc . . .

        e.      Garcia and Enriquez, upon information and belief, received a portion of the Missing Funds either in their own name or through Encorp.  Upon information and belief, Garcia and Enriquez at all relevant times, acted in their own interest or on behalf of Encorp, LLC, which does not appear to be a legitimate limited liability company.  Alternatively, Garcia and Enriquez purported to act through [Encorp[2]] and there exists such a unity of interest and operations between them that it would be unfair and prejudicial to observe the corporate form.

46.     For the reasons set forth above, it would be unjust for any of the Defendants to retain that portion of the Missing Funds that they received because, among other reasons, (a) BMF authorized the release of the Missing Funds in reasonable reliance on false representations (i.e. Litiscape's and others' representations that the funds would go to XPO); (b) Azulay and Joseph H Inc transferred the Missing Funds through forgery and fraud; (c) the Alleged Transaction fell through or never existed in the first place; (d) Defendants used the Missing Funds for purposes unrelated to the Alleged Transaction, including diverting the funds to their personal accounts or their investors on other deals; and (e) Defendants have conferred no reciprocal benefit upon BMF.

---

[2] For clarity, BMF uses the abbreviation "Encorp" in this motion to refer to EN Corp USA, a Texas corporation.

47.     Defendants' improper receipt and retention of the Missing Funds subjects them to an obligation to immediately disgorge the Missing Funds and return them to BMF.

<u>*Allegations Relating to Personal Jurisdiction*</u>

In addition to the foregoing allegations relating to BMF's unjust enrichment claim, the

Complaint contains the following allegations relating to the Court's exercise of personal

jurisdiction over Garcia and Enriquez.

13.     This Court has personal jurisdiction over Defendants upon the following grounds:

a.     Litiscape

     i.     . . .

     ii.    . . .

     iii.   BMF's allegations in this case arise out of Defendants' disposition of funds that BMF caused to be transferred to the custody of nonparty Clark Business Law, PLLC ("***Clark Law***"), a Utah professional limited liability company that maintains its principal place of business in the State of Utah.  Clark Law, at all relevant times hereto, represented Litiscape in this matter.  Clark Law drafted one or more agreements relevant to this matter that specify that this Court has jurisdiction in any dispute related to the funds transferred to Clark Law. Furthermore, BMF delivered the funds at issue in this lawsuit to Clark Law in Utah.

b.     Encorp

     i.     Encorp conducts regular and systematic business in Utah.

     ii.    Alternatively, Encorp has sufficient contacts with Utah such that (a) it would reasonably anticipate being haled into Court in Utah, (b) this Court's exercise of jurisdiction over Encorp would not offend traditional notions of fair play and substantial justice, and (c) BMF's allegations against Encorp arise out of Encorp's Utah contacts.

     iii.   Encorp engaged in tortious, inequitable, or otherwise wrongful conduct with respect to the funds BMF deposited with Clark Law in Utah—upon information and belief and without limitation, by accessing and

7

obtaining those funds from Utah—and knew or should have known that the effects of its conduct would justify this Court's exercise of jurisdiction over Encorp.

. . .

f.   Garcia and Enriquez

i.   Garcia and Enriquez conduct regular and systematic business in Utah.

ii.   Alternatively, Garcia and Enriquez have sufficient contacts with Utah such that (a) they would reasonably anticipate being haled into Court in Utah, (b) this Court's exercise of jurisdiction over Garcia and Enriquez would not offend traditional notions of fair play and substantial justice, and (c) BMF's allegations against Garcia and Enriquez arise out of their Utah contacts.

iii.   Upon information and belief, Garcia and Enriquez engaged in tortious, inequitable, or otherwise wrongful conduct with respect to the funds BMF deposited with Clark Law in Utah—upon information and belief and without limitation, by accessing and obtaining those funds from Utah—and knew or should have known that the effects of its conduct would justify this Court's exercise of jurisdiction over Garcia and Enriquez.

In addition to the foregoing, discovery has so far revealed a series of communications relating to the Alleged Transaction between Garcia, Enriquez, and others in Utah.  These include:

- On June 27, 2020, some weeks before the Encorp Parties received the Missing Funds, Garcia communicated directly with Carl Clark regarding funds on deposit with his firm relating to the Alleged Transaction.  Mr. Clark discussed with Garcia Litiscape and Kamalu's instruction to send Garcia a $500,000 wire.  Mr. Clark's signature block clearly shows his location in Utah—the situs for the custody account holding the funds for the Alleged Transaction.  A true and correct copy of Mr. Clark's email with Garcia is attached hereto as **Exhibit A**.[3]

---

[3] BMF received these documents from Litiscape in discovery.  *See* Declaration of James C. Dunkelberger, dated Jan. 7, 2022, attached hereto as **Exhibit D**.

- Similarly, on or about July 2, 2020, Garcia and Enriquez engaged in a series of emails with Mr. Clark's office regarding a Zoom meeting that was to take place relating to the Alleged Transaction.  A true and correct copy of the email chain is attached hereto as **Exhibit B**.

- On July 28, 2020, Kamalu forwarded Garcia an email from Joshua Bertagnole ("***Bertagnole***"), a banker with Chase Bank, relating to two wire transfers.  Bertagnole's signature block clearly disclosed that he was located in Utah.  A true and correct copy of the forwarded email is attached hereto as **Exhibit C**.

## ARGUMENT

A.   The Complaint States a Claim Against the Encorp Parties for Unjust Enrichment.

In deciding a Rule 12(b)(6) motion, courts must accept "as true all well-pleaded factual allegations in the complaint and [view] the allegations in the light most favorable to the nonmoving party."  *Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir. 2013).  To withstand a motion to dismiss, a complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[4]  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Hogan v. Winder*, 762 F.3d 1096, 1104 (10th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). The Supreme Court's plausibility standard "asks for more than a sheer possibility than a defendant has acted unlawfully," but it "is not akin

---

[4] Federal pleading standards apply to actions removed from state court, notwithstanding the fact that a different standard may have applied at the time the complaint was filed.  *Burgess v. Global Clean Energy Holdings, Inc.*, No. 2:11-CV-682 TS, 2011 WL 5546282, *6 n.14 (D. Utah Nov. 14, 2011) (unpublished) (citing Fed. R. Civ. P. 81(c) and *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210 (10th Cir. 2007)).

to a 'probability requirement.'" *Iqubal*, 556 U.S. at 6798. "[P]lausibility refers 'to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible.'" *See Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) ((quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)).

"[T]he 12(b)(6) standard does not require that [a plaintiff] establish a prima facie case in her complaint." *Id.* at 1192. However, courts should look at "the elements of each alleged cause of action," which "help to determine whether [a plaintiff] has set forth a plausible claim." *See id.* at 1192 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)). Courts recognize that "[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context." *See Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214–15 (10th Cir. 2011).

Here, the Encorp Parties move to dismiss the sole cause of action in the Complaint— unjust enrichment. Unjust enrichment requires a plaintiff to show: "'(1) a benefit conferred . . . ; (2) an appreciation or knowledge by the conferee of the benefit; and (3) the acceptance or retention [of the benefit] by the conferee . . . under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value.'" *U.S. Fid. v. U.S. Sports Specialty*, 2012 UT 3, ¶ 12, 270 P.3d 454 (alteration in original) (quoting *Rawlings v. Rawlings*, 2010 UT 52, ¶ 29, 240 P.3d 754). BMF pleads sufficient facts to state a claim for unjust enrichment against the Encorp Parties. BMF alleges that the Encorp Parties received a portion of the Missing Funds. The Encorp Parties should never have received the Missing Funds because they were supposed to be sent directly to XPO and refunded if the Alleged Transaction failed to materialize. Nevertheless, the Encorp Parties received and kept the Missing Funds even after it

became apparent that the Alleged Transaction would not close.  These facts show that it would be unjust to allow the Encorp Parties to keep the Missing Funds without compensating BMF.

The existence of one or more alleged agreements between the Encorp Parties and the other Defendants does not preclude BMF's unjust enrichment claim.  Nowhere in the Motion to Dismiss do the Encorp Parties allege or argue that BMF was a party to these agreements.  The alleged agreements do not provide legal relief to BMF that would preclude equitable relief.  *See E&M Sales West, Inc. v. Diversified Metal Products, Inc.*, 2009 UT App 299, ¶ 8, 221 P.3d 838.

### 1.   BMF Pleads Sufficient Facts to State a Claim for Unjust Enrichment.

The Utah Supreme Court has "noted that unjust enrichment plays an important role as a tool of equity . . . and therefore must remain a flexible and workable doctrine." *Rawlings*, 2010 UT 52, ¶ 29.  "The doctrine of unjust enrichment 'developed to remedy injustice when other areas of the law could not.'"  *U.S. Fid.*, 2012 UT 3, ¶ 12 (quoting *Rawlings*, 2010 UT 52, ¶ 29). Once a plaintiff establishes each of its elements, 'the remedy is one of restitution designed to restore to a plaintiff a benefit unjustly enjoyed by a defendant.'"  *See id.* (quoting *Am. Towers Owners Ass'n v. CCI Mech., Inc.*, 930 P.2d 1182, 1192 (Utah 1996)).

Here, the facts alleged in the Complaint, and the reasonable inferences arising from those facts, state a plausible claim.  The Court must accept as true BMF's allegations that (1) the non-Encorp Party Defendants wrongfully obtained the Missing Funds in the first place because BMF authorized funds to be released only to XPO for shipping for the Alleged Transaction; (2) Azulay and Joseph H Inc transferred the Missing Funds to Litiscape through forgery and fraud; (3) one or more of the Encorp Parties received a significant portion of the Missing Funds from Litiscape; (4) the Encorp Parties are aware of the benefit conferred upon them and have acknowledged

11

receipt of the benefit of the Missing Funds in communications with the other Defendants; (5) under the totality of the circumstances pleaded, it would be inequitable and unfair for the Encorp Parties to retain the portion of the Missing Funds that they received, knowing as they do that they were not supposed to receive those funds.  When it became apparent that the Alleged Transaction either fell through or had never existed at all, the Encorp Parties should have returned the Missing Funds to BMF immediately.  Instead, they used the Missing Funds for purposes unrelated to the Alleged Transaction, including diverting funds to their personal accounts or their investors, vendors, or creditors on other deals.  On the Encorp Parties' motion, the Court must accept these facts as true.

Nevertheless, the Motion to Dismiss launches three main attacks against the sufficiency of BMF's unjust enrichment claim.  First, the Encorp Parties argue that BMF fails to plead "appreciation or knowledge" of the benefit BMF conferred upon them.  *See* Mot. to Dismiss at 16.  Second, the Encorp Parties argue that BMF "lump[s]" the Encorp Defendants together such that they "cannot decipher which allegations are attributed to a which [sic] party."  *See* Mot. to Dismiss at 17.  Third, and relatedly, the Encorp Defendants argue that BMF fails to specifically allege "any material facts demonstrating a basis for liability against Garcia and Enriquez in their individual capacities."  *Id.* at 18.  Each argument fails.

a.      *"Appreciation" or "knowledge" of the benefit conferred on the Encorp Parties.*

The Encorp Parties do not dispute the allegation that they were aware they received the Missing Funds.  Rather, the Encorp Parties argue that the Complaint fails to allege that the Encorp Parties knew that the Missing Funds were from BMF "as opposed to Litiscape."  *See id.* at 16.  This argument is at odds with the cases cited above—and in the Motion to Dismiss—that

recite the elements of unjust enrichment without suggesting this additional requirement.  *See, e.g.*, *U.S. Fid.*, 2012 UT 3, ¶ 12 (requiring only "an appreciation or knowledge by the conferee *of the benefit*"); *Concrete Prod. Co. v. Salt Lake City*, 734 P.2d 910, 911 (Utah 1987) (same).

The sole case the Encorp Defendants cite to support their argument is *Spence v. Basic Research*, No. 2:16-cv-925-CW, 2017 WL 2416913 (D. Utah June 2, 2017) (unpublished). *Spence* is distinguishable.  In that case, a consumer brought a putative class-action lawsuit against the manufacturer of a dietary supplement for alleged false and fraudulent advertising.  *Id.* at *1.  The consumer alleged that the manufacturer was unjustly enriched by the revenue it "gained as a result of Plaintiff's purchase, and the purchase of each potential class member."  *See id.* at *5.  The Court dismissed the unjust enrichment claim and reasoned (in part) that the consumer did not show that the manufacturer "appreciated the benefit she personally conferred." *See id.* at *6.  The Court then explained that the consumer had "not alleged that any Defendant was aware of her purchase or the revenue it generated for the manufacturer."  *See id.*

Here, unlike the consumer in *Spence*, BMF alleges that the Encorp Parties were aware of the funds they received and benefitted from.  BMF's claim is not one of a class where its significance is in the aggregate with other alleged aggrieved parties.  BMF is out a specific sum of money—some of which the Encorp Parties have acknowledged they received.

Further, a reasonable inference from the facts alleged is that, even if the Encorp Parties were unaware of the source of the Missing Funds when they first received them, they at some point learned that they came from BMF.  At a minimum, they certainly know now.  A defendant's "appreciation" of a benefit is an example of where, as discussed above, the nature and elements of the claim must factor into the Court's evaluation of a Rule 12(b)(6) motion.

Plausibility cannot require BMF to give specific details about when the Encorp Parties learned certain facts in order to state a claim.  This is not the sort of information that a plaintiff would have about a defendant prior to discovery.  The Court should reject the Encorp Parties' attempt to expand the plausibility requirement to include information outside BMF's knowledge or control and uniquely within the Encorp Parties' knowledge or control.  *Cf. Khalik*, 671 F.3d at 1191 (rejecting a formulation of the plausibility standard that would place an "improper burden on plaintiffs . . . [who] will need discovery before they can satisfy plausibility requirements when there is asymmetry of information, with the defendants having all the evidence").

b.      *The Complaint's references to the Encorp Parties collectively*

In a number of places, the Complaint refers to the Encorp Parties collectively.  The Complaint also alleges in multiple instances that "Encorp, Garcia, and/or Enriquez" received a portion of the Missing Funds.  The Encorp Parties complain that this prevents them from being able to "decipher" which allegations go against which party.  The Encorp Parties cite in support two cases for the general proposition that pleadings must give a party "fair notice" of the claims against them.[5]  However, neither of these cases is helpful to the Encorp Parties.  Federal Rule of Civil Procedure 8(d) makes clear that a plaintiff may set claims out in the alternative, even if those claims are inconsistent.  The Complaint puts the Encorp Defendants on adequate notice that BMF seeks restitution from each of them to the extent they received the Missing Funds.[6]

---

[5] *See* Mot. at 17 (citing *Sposi v. Santa Clara City, Utah*, No. 2:17-cv-1057-CW, 2018 WL 1578038, at *1 (D. Utah Mar. 27, 2018) (unpublished); *United States v. Bush*, 70 F.3d 557, 562 (10th Cir. 1995)).

[6] The Encorp Parties also cite *Godsey v. Mitchell*, No. CIV-20-870, 2021 WL 681623 (W.D. Okla. Feb. 22, 2021) (unpublished).  *Godsey* is inapposite for a number of reasons.  Most glaringly, the conduct alleged in this case is much simpler than in *Godsey*.  Here, BMF clearly alleges, in the alternative, that Encorp *or* Garcia *or* Enriquez ended up with the Missing Funds.

14

Of course, discovery will reveal which of the Encorp Parties received which amount of the Missing Funds and how each party disposed of them. For obvious reasons, this information would not be available to BMF pre-discovery, and BMF is not required to plead it to state a plausible claim. Again, this information is in the Encorp Parties' exclusive control. It would defy common sense and the fair administration of the pleading and discovery process to require more detailed allegations at this stage. *See Khalik*, 671 F.3d at 1191 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").

       c.    *Garcia's and Enriquez' individual liability*

As discussed above, BMF alleges that Encorp *or* Garcia *or* Enriquez ultimately ended up with a portion of the Missing Funds. It is not possible for BMF to know at this stage which of the Encorp Parties received the Missing Funds and how much each received. Again, the plausibility requirement must be viewed here through the lens of the nature of the conduct alleged. A defendant's surreptitious misappropriation of funds for the defendants' improper use is not going to be readily ascertainable at the pleading stage. As such, if the Court accepts the Encorp Parties' reading of the plausibility requirement, it would effectively immunize a group of defendants any time they are able to successfully run a shell game to obfuscate the exact recipient of misappropriated funds.

---

By contrast, there was a question in *Godsey* whether a government official was being sued in his individual or official capacity, and the plaintiffs' use of "and/or" in their pleadings confused this issue. Accordingly, it was not clear from the pleadings exactly what claims the plaintiff intended to bring. BMF's Complaint does not suffer from the same ambiguity.

Further, and even more importantly, the Complaint straightforwardly alleges that "Garcia and Enriquez, upon information and belief, received a portion of the Missing Funds."  *See* Complaint ¶ 45.  It goes on to plead, in the alternative, that they may have received the funds in their own name or through a subsequent transfer from Encorp to either or both individuals. Again, there is no way for BMF to know the precise details of those transactions at this stage, which is why BMF pleads the claims alternatively against Encorp and Garcia and Enriquez.  For now, BMF need only show and has shown that the Court may properly "draw the reasonable inference that [a party is] liable for the misconduct alleged."  *See Hogan*, 762 F.3d at 1104.

2. **Alleged Agreements Between the Defendants Do Not Preclude BMF's Unjust Enrichment Claim.**

The Motion to Dismiss argues that BMF fails to state a claim for unjust enrichment due to alleged agreements between the Defendants.  The Motion to Dismiss focuses on BMF's alleged failure to plead the *non-existence* of a legal remedy available to BMF.  The Encorp Parties cite two cases in support of its argument that pleading the nonexistence of a contract is an essential element of an unjust enrichment claim:  *ClearOne, Inc. v. RSM US LLP*, No. 2:16-cv-00736-DN, 2017 WL 923949 (D. Utah Mar. 6, 2017) (unpublished), and *Arnson v. My Investing Place L.L.C.*, No. 2:12-cv-865, 2013 WL 5724048 (D. Utah Oct. 21, 2013) (unpublished).  Those cases do not compel dismissal as the Encorp Defendants argue.

In *ClearOne*, the Court took issue with the fact that the plaintiff attempted to plead a breach of contract claim *and also* an unjust enrichment claim.  *See* 2017 WL 923949 at *10–11. The Court noted that the plaintiff could plead claims in the alternative but concluded that the plaintiff had failed to properly do so.  *See id.* at *11.  The plaintiff pleaded only the *existence* of a valid contract and did not plead the alternative set of facts for the *non-existence* of a contract.

16

*See id.*  Similarly, in *Arnson*, the Court noted the general rule that a complaint must show on its

face that no legal remedy is available, but then focused on the fact that there, too, certain alleged

contracts *between the parties* appeared to govern the claim.

      Not so here.  The Complaint walks through the various parties to the Alleged Transaction

and how the Missing Funds ended up with the Encorp Parties.  The Encorp Parties received them

from Litiscape, which received them from the Clark Law account upon Azulay's forged

authorization.  Thus, the facts and circumstances surrounding the Encorp Parties' receipt of the

Missing Funds shows on the face of the Complaint that there is not an adequate remedy at law.

To the extent that the Encorp Parties argue that BMF must formulaically state that "BMF has no

adequate remedy at law" or words to that effect, the cases they cite do not support the argument.

      In their motion, the Encorp Parties reference certain contracts between the Defendants,

which Azulay and Litiscape discuss in their pleadings.  *See* Mot. at 2 n.1.  As an initial matter,

the Encorp Parties improperly raise matters outside the pleadings by reference to the contracts

that are not referenced in or central to BMF's Complaint.  *See GFF Corp. v. Assoc. Wholesale*

*Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) (providing that courts may consider a

document on a motion to dismiss if it "is referred to in the complaint and is central to the

plaintiff's claim").  Even more importantly, the Encorp Parties do not argue—nor could they

argue—that BMF was a party to these contracts and, thereby, tacitly admit that BMF was not a

party.  This is consistent with BMF's Complaint.  BMF is a stranger to these contracts, and the

Encorp Parties cannot establish an adequate legal remedy that would preclude BMF's unjust

enrichment claim.  *See E&M Sales West, Inc. v. Diversified Metal Prods., Inc.*, 2009 UT App

299, ¶ 8, 221 P.3d 838.  In *E&M Sales*, the Utah Court of Appeals noted that "even where there

is an express contract," an equitable claim may still be viable "if the equitable claim is based on a separate representation or misleading act arising independently of the express contract."  *See id.*  The court also noted that unjust enrichment might be available where the plaintiff is not a party to the express contracts covering the subject matter of the dispute.  *See id.* ¶¶ 13–14.

In this case, Utah law does not support the Encorp Parties' view that contracts between the Defendants bar BMF's claim.  The Encorp Parties are not entitled to rely on contracts outside the pleadings and/or that do not involve BMF or provide any contractual remedy for BMF. *E&M Sales* is instructive here and teaches that the mere existence of a contract somewhere in the parties' dealings or relationship does not mean that a legal remedy exists that precludes a plaintiff's equitable remedies.

B.    The Court Has Personal Jurisdiction Over Garcia and Enriquez.

"[T]he plaintiff bears the burden of establishing personal jurisdiction."  *Kindig It Design, Inc. v. Creative Controls, Inc.*, 157 F. Supp. 3d 1167, 1172 (D. Utah 2016) (citing *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011)).  However, unless the Court holds an evidentiary hearing, "the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion."  *See Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159 (10th Cir. 2010).  "The plaintiff may carry this burden by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant."  *Id.* (citation and internal quotation marks omitted).  "Any factual disputes must be resolved in the plaintiff's favor."  *See Kindig It*, 157 F. Supp. 3d at 1172–73.

Where, as in Utah, "the state long arm statute supports personal jurisdiction to the full extent constitutionally permitted, due process principles govern the inquiry."  *See Shrader*, 633

F.3d at 1239.  "Under the due process clause, a court may exercise personal jurisdiction over a defendant so long as (1) the defendant 'purposefully establishes minimum contacts with the forum State' and (2) the assertion of personal jurisdiction comports with notions of 'fair play and substantial justice.'"  *Celtig, LLC v. Patey*, 347 F. Supp. 3d 976, 982 (D. Utah 2018) (quoting *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017)).  "Whether a court may exercise personal jurisdiction over a defendant depends on the defendant's contacts with the forum state."  *Kindig It.*, 157 F. Supp. 3d at 1171.  "Those contacts may give rise to either general or specific personal jurisdiction."  *Id.*  "A party is subject to general personal jurisdiction only when its 'affiliations with the [forum] State are so continuous and systematic as to render them essentially at home in the forum state.'"  *Id.* (quoting *Daimler AG v. Bauman*, 134 S. Ct. 746, 755 (2014)).

 "[T]o satisfy the requirements of specific personal jurisdiction, the plaintiff must show 'that (1) the defendant has purposefully availed itself of the privilege of conducting activities or consummating a transaction in the forum state; and (2) the litigation results from alleged injuries that arise out of or relate to those activities.'"  *Id.* (quoting *Emp'rs Mut. Cas.*, 618 F.3d at 1160).  Once a plaintiff establishes "that the defendant had minimum contacts with the forum, it must also establish that the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice."  *See Celtig*, 347 F. Supp. 3d at 990.

In this case, each of the foregoing requirements is met.  The allegations of the Complaint and communications produced in this case so far demonstrate that Garcia and Enriquez purposely availed themselves of the privilege of transacting business in Utah.  BMF's claim

arises out of those dealings.  And the Court's exercise of jurisdiction over Garcia and Enriquez comports with traditional notions of fair play and substantial justice.

### 1. Purposeful Availment

"The purposeful availment requirement 'ensures that a defendant will not be subject to the laws of a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or the unilateral activity of another party or third person.'" *Kindig It.*, 157 F. Supp. 3d at 1171 (quoting *AST Sports Science, Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1056–57 (10th Cir. 2008)).  Here, the Complaint alleges that Garcia and Enriquez had sufficient contacts with Utah such that they could reasonably anticipate being haled to Court here.  The Complaint also alleges that Garcia and Enriquez knew or should have known that the effects of their conduct would fall here in Utah.  *See Celtig*, 347 F. Supp. 3d at 984 (discussing the elements plaintiff must show to establish personal jurisdiction based on the "effects" of defendants' conduct).

At all relevant times, Garcia and Enriquez knew that all funds relating to the Alleged Transaction were funneling through Clark Law in Utah.  On June 27, 2020, some weeks before the Encorp Parties received the Missing Funds, Garcia communicated directly with Carl Clark regarding other funds on deposit with his firm relating to the Alleged Transaction.  Mr. Clark discussed with Garcia Litiscape and Kamalu's instruction to send Garcia a $500,000 wire.  Mr. Clark's signature block clearly shows his location in Utah—the situs for the custody account holding the funds for the Alleged Transaction.  Similarly, on or about July 2, 2020, Garcia and Enriquez engaged in a series of emails with Mr. Clark's office regarding a Zoom meeting that was to take place relating to the Alleged Transaction.

Garcia and Enriquez also knew that Chase Bank's Farmington, Utah branch was involved in transferring money for the Alleged Transaction.  On July 28, 2020, Kamalu forwarded Garcia an email from Bertagnole, a banker with Chase, relating to two wire transfers.  Again, Bertagnole's signature block clearly disclosed that he was located in Utah.  Of course, BMF expects that these communications are merely the tip of the iceberg and that discovery will reveal additional contacts between Garcia, Enriquez, Clark Law (which was serving as counsel and agent to Litiscape and Kamalu), and others located in Utah.

Given the emails discussed above, it is plain that Garcia and Enriquez knew that the funds they would receive relating to the Alleged Transaction, including the Missing Funds, would come from and through Utah.  Further, they purposely interacted on multiple occasions with individuals that they knew resided and conducted business in Utah.  By extension, they knew or should have known that if they improperly took or retained funds from that account, harm to the rightful owner of the funds would occur in Utah.  Garcia and Enriquez purposely availed themselves of the privilege of doing business in Utah and transacting with funds located in Utah or in the custody of a Utah agent/fiduciary.

Garcia and Enriquez cannot sidestep this result by merely pointing to their role as officers in Encorp.  The Motion to Dismiss argues that "any involvement with this transaction was done solely in their capacities as principals of [Encorp], not in their individual capacities" and cites Garcia and Enriquez's declarations to support this argument.  However, this statement simply is not true to the extent that Garcia or Enriquez ended up with a portion of the Missing Funds in their personal account.  *That* is what BMF has alleged.  Garcia and Enriquez baldly deny receipt of any portion of the funds in their affidavit, but this is not a factual dispute that the Court can

resolve in their favor at this stage.  This is one of the ultimate issues in the case that should be the subject of discovery and further litigation.

### 2.      Arising Out Of

"The second step in the minimum contacts analysis is to determine whether the claims . . . 'arise out of' [a defendant's] 'suit-related' contacts with the forum." *Celtig*, 347 F. Supp. 3d at 989.  A plaintiff meets this requirement by demonstrating that the claims in the complaint "arise from [the defendant's] contacts with Utah" that relate to the dispute at hand.  *See id.*  BMF's allegations against the Encorp Parties meet this requirement.  The Encorp Parties wrongfully obtained the Missing Funds apparently as a direct and proximate result of their in-state communications with Cook and Litiscape.  BMF alleges that the Encorp Parties' involvement in the Alleged Transaction culminated in their misappropriation of the Missing Funds for personal use or use in other business ventures unrelated to the Alleged Transaction.  BMF's sole claim arises from this alleged misconduct.

### 3.      Traditional Notions of Fair Play and Substantial Justice

"Whether jurisdiction is reasonable in accordance with traditional notions of fair play and substantial justice depends of five factors." *See id.* at 990.  These are:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies.

*See id.* (quoting *Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1279–80 (10th Cir. 2005)).  Here, the foregoing factors, on balance, strongly favor a finding that this Court's exercise of jurisdiction is fair and reasonable.

*Burden on Garcia and Enriquez*.  The Motion to Dismiss argues that "[i]t would be burdensome for Enriquez and Garcia to litigate in Utah because they have virtually no connection to Utah such that there was no reasonable expectation that they would be haled into a Utah court, and they live, work and oversee Encorp's operations in Texas."  The Encorp Parties' argument bleeds over to their general (but unsupported) denial that they have any contacts with Utah.  The allegations and communications discussed above demonstrate otherwise.  Garcia and Enriquez ignore the burden that they would experience if this Court dismisses the claims against them and requires BMF to initiate a separate proceeding in Texas.  BMF pleads the same claim in the alternative against each of the Encorp Parties.  There is significant overlap in the relevant facts and law.  A duplicative proceeding on the same issues in Texas only multiplies legal expenses for Garcia and Enriquez.  They are already going to participate with Encorp in this case.  It makes no sense that Garcia and Enriquez are asking the Court to minimize the alleged burden of their participation in out-of-state litigation by saddling them with a second lawsuit.

*Utah's Interest in Adjudicating the Dispute*.  The Encorp Parties' argument on this point focuses on an alleged lack of a "meaningful nexus" between Enriquez and Garcia and Utah.  For the reasons discussed above, the Encorp Parties' characterization is not supported by the relevant allegations, facts, and documents.  By focusing on the "nexus" issue, the Encorp Parties attempt to sidestep Utah's clear interest in adjudicating this dispute.  The dispute arises out of funds that BMF transferred to the custody of a Utah fiduciary and a member of the Utah Bar.  The Alleged Transaction was built around funds being transferred in and out of Utah.  The Motion to Dismiss does not attempt to explain why Utah would not have an interest in any dispute arising out of the Alleged Transaction, which was, for all intents and purposes, located in Utah.

*BMF's Interest in Convenient and Effective Relief*.  Although BMF could initiate a lawsuit against Garcia and Enriquez in Texas, as discussed above, there is a serious question about why the Court would require it to.  All that would do is double the litigation between BMF and the Encorp Parties and stretch the parties' (and judicial) resources even farther.  Again, the Encorp Parties do not and cannot explain how that serves BMF's interest or theirs.

*The Interstate Judicial System's Interest in Efficiency*.  The Motion to Dismiss points out that the parties and potential witnesses in this case are far flung among several states and Canada.  The Motion to Dismiss argues that this "necessarily means that many of the witnesses and documents relating to these allegations will be located outside of Utah."  The Encorp Parties do not address the fact that this problem would inhere in any case brought in any one of those states.  If everyone is located in a different state, then of course any case will involve parties and witnesses in different states.  Garcia and Enriquez fail to show how Utah is any less convenient than any other state.  And they fail to address the likelihood that given that Utah was the situs of the Alleged Transaction, it makes sense that the parties would choose Utah as a neutral ground of sorts.  Again as to this factor, the Encorp Parties' argument actually cuts in favor of Utah's reasonable exercise of jurisdiction.

*Utah's Interest in Substantive Social Policies*.  The Motion to Dismiss argues that "this action in Utah will not advance any fundamental substantive social policy."  *See* Motion to Dismiss at 15.  "In fact," they argue, "it has not been established that Utah law even applies to this dispute."  As with the previous factor, the Encorp Parties make no attempt to analyze whether any other state is a better fit.  No other state is a better fit.  This case involves Garcia's

and Enriquez' contacts with Clark Law here in Utah relating to funds located in the state.  Utah has as much interest in this dispute as any other state.

In light of the foregoing, the Court should reject the Encorp Parties' argument that the balance of factors show that the Court's exercise of jurisdiction is unreasonable.  It is not.  What is unreasonable is Encorp Parties' insistence that two lawsuits are less burdensome than one.  Similarly, the Court cannot find as the Encorp Parties' urge that in a case where the Court's subject-matter jurisdiction hinges on complete diversity that personal jurisdiction is improper because parties and witnesses are out-of-state.  Of course they are.  And BMF would have faced the same issue had it brought suit in Texas, New York, or anywhere else.  The Court's exercise of personal jurisdiction is reasonable and comports with Garcia and Enriquez' due process rights.

**<u>CONCLUSION</u>**

BMF respectfully requests that the Court deny the Motion to Dismiss.  BMF adequately states a claim for unjust enrichment given the equitable nature of the claim and the straightforward allegations of the facts and circumstances of the Encorp Parties' receipt and misappropriation of the Missing Funds.  The fact that BMF has pled the claim alternatively against each of the Encorp Defendants—and the existence of contracts that BMF was not a party to—do not preclude BMF's claim.  Further, the Complaint and communications discussed above adequately demonstrate this Court's personal jurisdiction over Garcia and Enriquez.  They purposely availed themselves of participation in the Alleged Transaction (again, to the extent that they personally received the Missing Funds) knowing that the Missing Funds flowed to and through multiple Utah agents/fiduciaries.  The Court's exercise of jurisdiction over them is fair and reasonable.

25

DATED this 7th day of January, 2022.

BENNETT TUELLER JOHNSON & DEERE

/s / *James C. Dunkelberger*
Daniel K. Brough
James C. Dunkelberger
Bradley C. Johnson
*Counsel for Plaintiff BMF Advance, LLC*

## CERTIFICATE OF SERVICE

The undersigned certifies that on January 7, 2022, the foregoing **MEMORANDUM IN OPPOSITION TO ENCORP PARTIES' MOTION TO DISMISS** was electronically filed with the Clerk of the Court by means of the Court's electronic filing system, which sent notice of electronic filing to the following:

Jonathan O. Hafen
Kevin Heiner
PARR BROWN GEE & LOVELESS
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
jhafen@parrbrown.com
kheiner@parrbrown.com

John A. Wirthlin
Amy F. Sorenson
SNELL & WILMER LLP
15 West South Temple, Suite 1200
Gateway Tower West
Salt Lake City, Utah 84101
jwirthlin@swlaw.com
asorenson@swlaw.com

Chase A. Adams
Alyssa Wood
STEELE ADAMS HOSMAN
765 East 9000 South, Suite A1
Sandy, Utah 84094
chase@sahlegal.com
alyssa@sahlegal.com

_/s/_      _Samantha Ruiz_